SIMMONS *et al.* v. HEADLEE *et al., Appellants.*

**Statute of Frauds**: ORAL CONTRACT FOR CONVEYANCE OF LAND : POSSESSION : PART PERFORMANCE. Where land of which the owner was in possession was sold under a judgment against him and a sheriff's deed executed to the purchaser, but it was subsequently orally agreed between the parties that if the owner would pay the judgment against him he should retain his land and the purchaser would reconvey to him, and he paid the judgment and continued in possession, but no reconveyance was made, such continued possession will be held to refer to the oral contract, and, together with the performance of the latter by the owner, will be sufficient to take the transaction out of the operation of the statute of frauds.

*Appeal from Greene Circuit Court.*—HON. W. F. GEIGER, Judge.

REVERSED AND REMANDED.

*F. S. Heffernan* and *C. W. Thrasher* for appellants.

(1) The evidence in this case shows such performance of the parol contract on the part of defendant, O'Callahan, as will take the case out of the operation of the statute of frauds, and constitute a complete equitable defence to the action. *Bean v. Valle,* 2 Mo. 102, 135; *Farrar v. Patton,* 20 Mo. 81, 84; *Charpiott v. Sigerson,* 25 Mo. 63; *Dickerson v. Chrisman,* 28 Mo. 134, 140; *Gupton v. Gupton,* 47 Mo. 37, 46; *Tatum v. Brooker,* 51 Mo. 148; *Price v. Hart,* 29 Mo. 171; *Despain v. Carter,* 21 Mo. 331, 336; *Adair v. Adair,* 78 Mo. 630, 633; *Wetmore v. White,* 2 Cain's Cas. 109; *Burke v. Saley,* 46 Mo. 334; *Throckmorton v. Davidson,* 68 Iowa, 643. If the vendee is in possession of the premises at the time of the sale, and continues so thereafter with the consent of the vendor, that is part performance

of the contract. *Fisher v. Moolick*, 13 Wis. 321 ; *Snider v. Thrall*, 56 Wis. 674 ; *Winchell v. Winchell*, 1 Central Rep. 235 ; *Brown v. Jones*, 46 Barb. 400 ; *Pain v. Coombs*, 1 DeG. & J. 34, 46 ; *Gregory v. Mighell*, 18 Ves. 328. Where a parol agreement for the sale of land is silent as to the possession, the land vacant, the entire consideration paid, and the agreement fully performed on the part of the vendee, leaving nothing for the vendor to do but to give a deed, there is an implied agreement that the vendee may at once take and hold possession. *Miller v. Ball*, 64 N. Y. T. 286 ; Waterman on Specific Performance, sec. 270. The entire performance of this parol contract on the part of the appellants takes it out of the operation of the statute of frauds. *Hoyle v. Bush*, 14 Mo. App. 408 ; *Self v. Cordell*, 45 Mo. 345 ; *Tatum v. Brooker*, 51 Mo. 148 ; *Blanton v. Knox*, 3 Mo. 342 ; *Pitcher v. Wilson*, 5 Mo. 48 ; *Suggett's Adm'r v. Cason's Adm'r*, 26 Mo. 221. (2) The court below erred in giving the declaration of law asked by plaintiffs. (3) The court below erred in refusing the declarations of law asked by defendants. (4) The respondent, Ferdinand Emmel, claiming title to twenty acres of this land under a quit-claim deed from said P. T. Simmons, stands no better than the heirs of said Simmons, and is affected by all the equities between said P. T. Simmons and said O'Callahan. *Ridgeway v. Holliday*, 59 Mo. 444 ; *Stivers v. Horne*, 62 Mo. 473 ; *Mann v. Best*, 62 Mo. 491 ; *Austin v. Loring*, 63 Mo. 19.

*Goode & Cravens* for respondents.

(1) The deed of trust made by the defendant, O'Callahan, to T. K. O'Day, for James Hayes, and the foreclosure sale thereunder to E. C. O'Day, afford no defence to these actions. Defendants were in possession when the actions were brought ; there had been no sale under the deed of trust at that time, so plaintiffs' cause of

action was then complete and they are entitled to recover whatever interest the defendants had. *Laughlin v. Stone,* 5 Mo. 43; *Jackson v. Bush,* 10 Johns. 223; *Kennett v. Plummer,* 28 Mo. 142; *Woods v. Hildebrand,* 46 Mo. 284. The defendant, O'Callahan, was in possession at the time P. T. Simmons purchased the land at execution sale, and, hence, cannot defeat the right of plaintiffs to recover by setting up an outstanding title. *Page v. Hill,* 11 Mo. 149; *Mathews v. Lecompte,* 24 Mo. 545; *Boyd v. Jones,* 49 Mo. 202. This case is precisely like the case at bar as to the point under consideration. *Matney v. Graham,* 59 Mo. 190; *Gitchell v. Kreidler,* 13 Mo. App. 497; *Bobb v. Graham,* 15 Mo. App. 289. (2) If the deposition of Mr. O'Day is taken as true, it establishes a verbal agreement on the part of Simmons to convey the land in controversy to the defendant, O'Callahan, of which there was no such part performance as will take it out of the statute of frauds. O'Callahan was in possession for years before the verbal contract with Simmons is alleged to have been made, and possession, to amount to part performance, must be taken under and pursuant to the contract. *Bean v. Valle,* 2 Mo. 102, 135; *Parke v. Leewright,* 20 Mo. 85; *Ellis v. Railroad,* 51 Mo. 200; *Culligan v. Wingerter,* 57 Mo. 250; *Townsend v. Hawkins,* 45 Mo. 286; *Spalding v. Conzelman,* 30 Mo. 177; *Wiley v. Roberts,* 31 Mo. 212; *Miltenberger v. Morrison,* 39 Mo. 72; *Sitton v. Shipp,* 65 Mo. 297; *Bowles v. Walthan,* 54 Mo. 261; *Lydick v. Holland,* 83 Mo. 703; *Morris v. Williams,* 95 U. S. 444; *Johnson v. Glancy,* 4 Blackf. 94; *Christy v. Barnhart,* 53 Am. Dec. 538; *Gangwer v. Fry,* 55 Am. Dec. 578. Payment of purchase money is not part performance. *Chambers v. Lecompte,* 9 Mo. 575; *Galway v. Shields,* 1 Mo. App. 546; s. c., 66 Mo. 313; *Bean v. Valle, supra; Lydick v. Holland,* 83 Mo. 703. (3) The policy of our courts is to keep the exceptions to the statute strictly confined within the barriers originally

assigned to them. *Chapman v. Templeton*, 53 Mo. 463 ; *Kennedy v. Kennedy*, 57 Mo. 73 ; *Charpiot v. Sigerson*, 25 Mo. 63 ; *Webster v. Gray*, 37 Mich. 37.

NORTON, C. J.—This is an action of ejectment to recover possession of certain lands in Greene county. In support of their title, the plaintiffs, who are the heirs of P. T. Simmons, deceased, put in evidence a sheriff's deed conveying to said P. T. Simmons all the interest of defendant, Thomas O'Callahan, to the land sued for. It appears from this deed that on the thirty-first of May, 1881, a judgment was rendered in the circuit court of Greene county in favor of one Lander Sell, against said O'Callahan, for $54.75 and $4.40 for costs, which judgment was assigned to Simmons & Hubbard ; that on this judgment an execution was issued on the seventeenth of September, 1881, which was levied on the land in question, and at a sale made thereunder, on the third of December, 1881, P. T. Simmons, the ancestor of plaintiffs, became the purchaser thereof for twenty-five dollars. Said P. T. Simmons was a member of the law firm of Simmons & Hubbard.

To overcome the right of plaintiffs to recover on this deed, John O'Day was introduced as a witness by defendants, and in substance testified that he, in conjunction with his brother, T. K. O'Day, were the attorneys of defendant, O'Callahan, in a replevin suit, in which he was plaintiff and Lander Sell was defendant ; that, on the trial, a part of the property in controversy was found to belong to O'Callahan, and a part to Sell, for which each respectively recovered judgment against the other, as well as a proportionate part of the costs ; that execution was issued against the respective parties ; that, under the execution issued against Sell, his land was sold at the November term, 1881, of the circuit court of Greene county, and was purchased by said T. K. O'Day for thirty-five dollars ; that, under an execution

which issued on the judgment in Sell's favor against O'Callahan, the land in question was sold on the third of December, 1881, and said P. T. Simmons became the purchaser for twenty-five dollars. The witness further stated that, after these sales had been made, the firm of John O'Day & Brother, representing O'Callahan, and said Simmons, of the law firm of Simmons & Hubbard, met for the purpose of settling matters between O'Callahan and Sell growing out of these and other judgments; that in the negotiations he advanced for O'Callahan five hundred dollars to pay a judgment against him in favor of Phebe O'Callahan, also some money to pay to F. Emmel; that in the settlement it was agreed that T. K. O'Day should not take a deed for the land of Sells which he had bought at said execution sale, and that said P. T. Simmons should convey or release to O'Callahan whatever title he might have acquired to his land under the sheriff's deed, on the payment of the amount of Sell's judgment against him, which amount was paid to said Simmons, and said T. K. O'Day did not take a sheriff's deed to the land of said Sell which he had bought at the execution sale. He further testified that the settlement was a final one, each man to retain his own lands, as if there had been no sale, that is, Sell and O'Callahan.

Simmons died in April, 1883, without having made a deed, and without having made a claim of possession from O'Callahan. At the time this contract was made, and prior thereto, O'Callahan was in possession of the land, and remained in possession after it was made, receiving the rents and profits. The evidence of this witness, as to the contract, was corroborated by that of O'Callahan, and by the fact that, after T. K. O'Day's death, which occurred in November, 1883, a blank sheriff's deed to the land of Sells was found unexecuted among his papers. The circuit court found that these facts did not constitute such an equitable defence as to prevent plaintiffs from recovering possession of the land,

and rendered judgment accordingly, and it is from this judgment that defendants appeal, and the sole question presented is, whether the parol agreement testified to, is or is not taken from under the operation of the statute of frauds by the full performance of it on O'Callahan's part, in paying the price agreed upon for a release or reconveyance, and by his remaining in possession and by his attorney, O'Day, not taking a deed to the land of Sell.

Counsel for plaintiffs contend, that notwithstanding the fact that O'Callahan fully performed his part of the contract in paying the purchase money, it was not thereby taken out of the statute of frauds, and unless it was further shown that he took possession of the land under the contract, the equitable defence relied upon cannot prevail, and that O'Callahan being in possession when the contract was entered into, his subsequent and continuing possession could not be referred to the contract. The defendant's counsel, to establish the proposition, that, when one party to a verbal contract, which, by the statute of frauds, is required to be in writing, has fully performed his part of the contract, that the statute affords no defence to the other party, have cited us to several cases, of which the case of *Self v. Cordell*, 45 Mo. 345, is a representative, in which it is said that, "it is the established doctrine of this court, and the settled law of this state, that where an agreement not in writing has been wholly performed on one side, the other party thereto cannot interpose the defence of the statute of frauds."

It may be said of this case and the class of cases it represents, that it related to a contract not to be performed within a year, and while the logic of these cases might apply to contracts for the sale of real property, it has not been so applied by this court; as will be seen by reference to the cases of *Galway v. Shields*, 66 Mo. 314, and *Charpiot v. Sigerson*, 25 Mo. 63, it being said in the case last cited, that payment of the purchase

money, or a part of it, would not be sufficient to take a verbal contract for the sale of land out of the operation of the statute, but that in such cases if possession were taken under the contract, or the possession might be referred to it, it would be sufficient.

Conceding the rule to be as above stated, and as counsel for plaintiffs contend it is, the question remains, do the facts in evidence bring the contract relied upon within the operation of it. It is claimed that they do not, for the reason that O'Callahan's possession, subsequent to the contract, must be regarded simply as a continuance of his prior possession, and cannot be referred to the contract. This position, we think, cannot be maintained, in view of the evidence of O'Day, to the effect that it was agreed that each party should *retain* his land, as if no sale had been made, that is, Sell and O'Callahan. No other inference can be drawn from this, than that the possession of each of these parties should continue, especially so in view of the further fact that Simmons, up to the time of his death, made no further claim to the land, and allowed O'Callahan to take the profits. The contention that, before O'Callahan's possession, after the contract was entered into, could be referred to it, that he ought to have surrendered the possession he had, and then taken possession under the contract, is extremely technical.

It seems to be admitted that if O'Callahan had given the possession he had to Simmons and then entered into possession, that this, in connection with the fact that he had paid the purchase money, would have taken the case out of the statute. It seems to us that, under the circumstances of this case, and especially in view of the fact that it was agreed that O'Callahan should retain the land as if no sale had been made ; that the law did not require that he should go through the formal ceremony of delivering up possession to Simmons, and then going back into possession under

the contract in order to make it valid. As is said in case of *Snider v. Thrall*, 56 Wis. 674, where a kindred question is discussed, "The law is founded in reason and common sense, and requires the performance of no such useless acts to make a sale valid." See also, *Winters v. Cherry*, 78 Mo. 344; *Webb v. Toms*, 86 Mo. 591.

Judgment reversed and cause remanded, in which all concur, except Ray, J., absent.